THE NORTHERN TRUST COMPANY, Guardian of the Estate of Donna Faye Collins, a Minor, *et al.*, Plaintiffs-Appellees and Cross-Appellants, v. LOUIS A. WEISS MEMORIAL HOSPITAL, Defendant-Appellant (Shirley Anderson, R.N., Defendant-Cross-Appellee).

First District (3rd Division)   No. 83—1712

Opinion filed March 19, 1986.—Rehearing denied May 29, 1986.

Lord, Bissell & Brook, of Chicago (Harold L. Jacobson, William C. Anderson III, and Hugh C. Griffin, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, Dennis J. Horan, and Joanna C. New, of counsel), for appellee Shirley Anderson.

James H. Canel, Ltd., and Leonard C. Arnold, Ltd., both of Chicago (James H. Canel and Patricia N. Hale, of counsel), for other appellees.

PRESIDING JUSTICE WHITE delivered the opinion of the court:

Plaintiff Billy Collins, as father and next friend of Donna Faye Collins, brought a medical malpractice suit against defendants Louis A. Weiss Memorial Hospital (Weiss Hospital), Tomasa Rubiano, R.N., Shirley Anderson, R.N., and Albert F. Stein, M.D.; seeking money damages for Donna's injuries. Billy and Janice Collins also brought suit against the same defendants on their own behalf, seeking reimbursement for medical care for Donna. Northern Trust Company was substituted as plaintiff when it was appointed guardian of Donna's estate. The jury returned verdicts in favor of defendants Rubiano, Anderson and Stein, but it returned verdicts against defendant Weiss Hospital in the amount of $1,500,000 for injury to Donna and in the amount of $30,011.41 for medical expenses that Billy and Janice incurred in caring for Donna. Weiss Hospital appeals from the verdicts against it, and plaintiffs appeal from the verdict in favor of Anderson. We affirm the verdicts in favor of Donna Collins and Nurse Anderson, and we reverse the verdict in favor of Billy and Janice Collins.

After a normal pregnancy, Janice Collins gave birth to a daughter, Donna Faye Collins, at Weiss Hospital at 11:35 a.m. on September 23, 1970. Shortly before delivering Donna, Dr. Jarolim artificially ruptured the membrane which contained Donna and amniotic fluid. He noticed that there was copious meconium, fecal matter of the fetus, in the amniotic fluid. The meconium indicated that the baby had undergone some trauma within the day before delivery.

The medical staff measured Donna's health shortly after birth using the Apgar test. After one minute of life, Donna's Apgar score was seven, showing acceptable health; after five minutes her score was ten, showing excellent health. Her cry was weak and her color was slightly bluish, but both her cry and her color were not seriously abnormal for a newborn baby. Dr. Jarolim had Donna placed in an isolette with oxygen and transferred her to the newborn nursery at the

hospital. Weiss Hospital did not have any facilities for taking care of sick babies. Its nursery was strictly a "well baby" nursery.

Defendant Dr. Stein gave Donna a complete examination at 2:30 p.m. and he found her to be basically in good condition. However, he noted that her respirations were rapid at times, and he knew that Donna became bluish (showing inadequate oxygen) when she was removed from the isolette for examination. Defendant Tomasa Rubiano took care of Donna from 3 p.m. to 11 p.m. in the nursery. Donna progressed fairly well over this time, but her respirations remained shallow and rapid. Nurse Rubiano called Dr. Stein to report on the baby's condition, and he ordered that Donna not be given any food by mouth until the next morning.

Defendant Shirley Anderson took care of Donna from 11 p.m. on September 23 until 7 a.m. on September 24. At 11:30 p.m. she recorded that Donna's respirations had become very rapid: Donna took 150 breaths per minute, doubling the rate she showed at 8 p.m., and far in excess of the normal rate of 30 to 60 breaths per minute. Donna's temperature was 100°, up from a 4:30 p.m. reading of 96°, and from an 8 p.m. reading of 98.6°. The normal temperature, rectally measured, is 99.6°, so Donna's temperature was .4 of one degree high at 11:30 p.m.

Donna's respirations were in the normal range, at 54 per minute, at 12:30 a.m. Her color remained good in the isolette. By 2:30 a.m., Donna's respirations were back up to 100 per minute. At 3:50 a.m., she vomitted a large amount of thick, green mucus while her respirations remained rapid. At 5 a.m. Nurse Anderson recorded that Donna's temperature rose to 100.4° despite a decrease in the isolette temperature. Donna's respirations remained rapid (128 respirations per minute) and her color appeared dusky at times. By 5:30 a.m. Donna was experiencing slight retractions, which indicate that she was having substantial respiratory distress. Around 6 a.m. Donna vomited brown mucus. Nurse Anderson called Dr. Stein sometime around 6 a.m. and informed him of Donna's condition. Dr. Stein ordered increased oxygen in the isolette, and he arranged for Donna's transfer to Children's Memorial Hospital, which has facilities for the care of sick babies. He arrived at Weiss Hospital around 8:15 a.m. on September 24, and he gave Donna another complete examination. When she was transferred at 9:30 a.m., she was grunting and beginning to appear flaccid. According to plaintiffs' expert, the flaccidity indicated that Donna was beginning to suffer brain damage.

Donna remained at Children's Memorial Hospital until October 14, 1970, when she was discharged to the care of her parents. She had

already suffered severe brain damage. Her discharge diagnosis was "Klebsiella sepsis," which is an infection caused by the Klebsiella bacteria. She is retarded, and she will never be able to take care of herself or work in a competitive, productive work situation.

In November 1978, Billy Collins, as father and next friend of Donna Collins, brought this action against Weiss Hospital, Nurse Anderson, Nurse Rubiano, Dr. Stein and other individuals not involved in this appeal. Plaintiffs charged that all of the defendants negligently failed to provide Donna with medical care consistent with the standards prevailing in 1970, and that as a result of that negligence Donna is brain damaged and retarded. Billy and Janice Collins also sued for past and future medical expenses related to treatment for Donna's brain damage.

After trial the jury returned verdicts in favor of defendants Nurse Anderson, Nurse Rubiano and Dr. Stein, but the jury found Weiss Hospital liable.

Weiss Hospital appeals, arguing (1) that the verdicts are inconsistent, (2) that plaintiffs failed to show that defendants proximately caused the injury, (3) that the trial court erroneously interpreted pertinent regulations, (4) that the trial court improperly excluded the testimony of one of defendants' experts, and (5) that the trial court instructed the jury incorrectly. Weiss Hospital contends that the claim brought by Donna's parents is barred by the statute of limitations. Plaintiffs also appeal, arguing that the verdict in favor of Nurse Anderson is contrary to the manifest weight of the evidence. Plaintiffs do not appeal from the judgments in favor of other defendants.

I

■ First, Weiss Hospital argues that the verdict against the hospital is inconsistent with the verdicts in favor of the individual defendants. Plaintiffs concede that the hospital cannot be liable on a *respondeat superior* theory if the individual defendants are not liable. However, plaintiffs contend that Weiss Hospital can be held independently liable for its failure to provide a specially trained nurse to supervise Donna's overnight care on September 23, to September 24, 1970.

Between 11:30 p.m. on September 23 and 7 a.m. on September 24, 1970, the sole nurse on duty in Weiss Hospital's nursery was defendant Anderson. Anderson received her nursing degree in 1969, upon completion of a three-year nursing program in Pennsylvania. Anderson testified that she had approximately five weeks of training in newborn care during her three years in nursing school. Approxi-

mately 2½ weeks were devoted to hands-on care for babies, and Anderson never took care of sick newborns while she was in nursing school. Anderson could not recall any further training or experience in newborn care between her graduation and July of 1970, when she was hired by Weiss Hospital. Between July and September of 1970, Anderson worked for the maternity department of Weiss Hospital, dividing her time between the labor-delivery unit, the postpartum unit, and the newborn nursery. Nurse Charlene Ehlscheid oriented Anderson in the nursery, showing Anderson the routine and the policies and procedures of the unit, and working with her until both Anderson and Ehlscheid felt that Anderson was ready to work independently. Anderson had no choice of where or when she would work. She was assigned to work the overnight shift on September 23-24, 1970.

According to the regulations of the Chicago board of health in effect during September 1970, "[t]here shall be one registered professional nurse specially trained in the care of newborn and premature infants supervising each nursery at all times." The trial court instructed the jurors that, if they found that a party had violated that regulation, they could take that violation into consideration in determining whether or not the party was negligent. The trial court further instructed the jurors that they could find Weiss Hospital liable if they found that it negligently "[f]ailed to provide registered professional nurses with special training in the care of the newborn supervising the care of Donna Collins at all times," and if they found that the failure proximately caused Donna's injuries. Plaintiffs rely on this instruction as grounds for supporting the jury's verdict.

Weiss Hospital argues that this instruction states only a "special training" theory against the hospital, and the hospital is not liable under that theory unless its inadequately trained employee is also liable, citing *Rogina v. Midwest Flying Service, Inc.* (1945), 325 Ill. App. 588, 60 N.E.2d 633, and other cases. However, in all cases defendant cites, the employer was held to the same standard of care as the employee. In the instant case, the court correctly instructed the jury that Anderson was required to "possess and apply the knowledge and use the skill and care that is ordinarily used by reasonably well-qualified nurses *** in similar cases and circumstances. A failure to do so is a form of negligence that is called malpractice."

The jury reasonably could have found that Anderson had and applied the knowledge and used the care of a reasonably well-qualified nurse observing newborns, and that what was lacking was the supervision of a specially trained nurse. Nurse Anderson would have met the applicable standard of care by conscientiously charting the pro-

gress of the infants. The hospital alone is responsible for providing a nurse to supervise the nursery, and that supervising nurse must be specially trained so that she can appropriately judge when there is an emergency which warrants calling a doctor. (See *Story v. McCurtain Memorial Medical Management, Inc.* (Okla. App. 1981), 634 P.2d 778, 780.) The jury evidently found that Weiss Hospital negligently failed to provide a specially trained nurse to supervise Anderson, even though Anderson performed the duties appropriately assigned to her in accordance with the standard of care. Therefore, we find that the verdict against Weiss Hospital is not inconsistent with the verdicts in favor of all individual defendants. See *Cohen v. Sager* (1971), 2 Ill. App. 3d 1018, 1019, 278 N.E.2d 453.

## II

Weiss Hospital maintains that the evidence cannot support a finding that Weiss Hospital's failure to provide a specially trained nurse proximately caused Donna's brain damage. Plaintiffs presented evidence that Donna was healthy at birth, and her condition deteriorated during the 20 hours she was at Weiss Hospital. Plaintiffs' expert on meconium aspiration, Dr. Gregory, testified that, to a reasonable degree of medical certainty, he believed that Donna experienced meconium aspiration at Weiss Hospital, and the meconium aspiration caused Donna's brain damage.[1] He testified that under the standard of care in 1970, a specially trained nurse should have notified Dr. Stein of Donna's condition at 11:30 p.m. on September 23, 1970, 6½ hours earlier than Nurse Anderson called Dr. Stein. Dr. Gregory further testified:

"[T]he longer you delay a diagnosis *** the more likely you are to have a bad outcome ***. The sooner the treatment was instituted, the better it would have been for the child and the less likely it would have been that she would have become as seriously asphyxiated as she had been at Weiss Hospital."

On redirect, plaintiff's attorney asked Dr. Gregory:

"Q. Did [the nurses'] failure to notify Dr. Stein before 6:00 a.m. the following morning make a difference to Donna Collins?

A. I can't say whether it did or not. But if you have a problem, the sooner it's diagnosed and treated, the less likely you

---

[1]Dr. Gregory explained that when thick, particulate meconium gets into the baby's lungs shortly before birth, the baby may have difficulty breathing. As the baby breathes, its lungs may become clogged with meconium, causing the baby to get inadequate amounts of oxygen. He stated that the lack of adequate amounts of oxygen, called hypoxia, can cause brain damage.

are to have a permanent problem.

Q. Within a reasonable degree of medical certainty, do you have an opinion as to whether or not Donna Collins suffered an increase in morbidity[2] associated with the delay in notifying Dr. Stein and transferring unit?

A. I believe that that's a reasonable probability."

■ Weiss Hospital contends that Dr. Gregory's testimony is not adequate to sustain a finding of proximate causation because he could not say whether the delay in notifying Dr. Stein made a difference to Donna. However, Dr. Gregory testified that the delay increased the likelihood of permanent damage.

According to the Second Restatement of Torts:

"One who undertakes *** to render services to another which he should recognize as necessary for the protection of the other's person *** is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm ***." (Restatement (Second) of Torts sec. 323 (1965).)

Several courts have applied this section to medical malpractice cases. (*E.g., Hamil v. Bashline* (1978), 481 Pa. 256, 272, 392 A.2d 1280, 1288; *Herskovits v. Group Health Cooperative* (1983), 99 Wash. 2d 609, 613, 664 P.2d 474, 476.) As the Supreme Court of Pennsylvania stated in *Hamil*:

"Once a plaintiff has introduced evidence that a defendant's negligent act or omission increased the risk of harm to a person in plaintiff's position, and that the harm was in fact sustained, it becomes a question for the jury as to whether or not that increased risk was a substantial factor in producing the harm." (*Hamil v. Bashline* (1978), 481 Pa. 256, 269, 392 A.2d 1280, 1286.)

Illinois courts have adopted section 323 in other contexts. (*Greene v. City of Chicago* (1976), 48 Ill. App. 3d 502, 509, 363 N.E.2d 378, *aff'd* (1978), 73 Ill. 2d 100, 382 N.E.2d 1205.) Although some State courts have refused to apply this section to medical malpractice cases (see, *e.g., Cooper v. Sisters of Charity of Cincinnati, Inc.* (1971), 27 Ohio St. 2d 242, 252-53, 272 N.E.2d 97, 104), we believe that the better rule is that "[e]vidence which shows to a reasonable certainty that negligent delay in diagnosis or treatment *** lessened the effectiveness of treatment is sufficient to establish proximate cause." *James v.*

---

[2]"Morbidity" refers to complications due to an ongoing disease process.

*United States* (N.D. Cal. 1980), 483 F. Supp. 581, 585.

Weiss Hospital argues that plaintiffs' evidence was inadequate even under section 323 of the Restatement because plaintiff did not produce "affirmative evidence" that the delay in diagnosis and treatment caused any increased risk of harm to Donna. (*Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 423, 328 N.E.2d 301.) According to Weiss Hospital, Dr. Gregory based his opinion only on the general truism that any delay in diagnosis increases the probability of harm, but that no witness ever identified any omitted or delayed treatment which would have prevented Donna's injuries.

Dr. Gregory testified that according to the standard of care in 1970, when Donna showed signs of respiratory distress after there was known evidence of meconium aspiration, several diagnostic steps should have been taken, and Weiss Hospital should have rendered four treatments: (1) Donna should have received antibiotics since her elevated temperature indicated the possibility of an infection; (2) she should have received sodium bicarbonate since she had mild acidosis; (3) her stomach should have been cleaned out by gastric lavage so that she would not be in danger of inhaling more meconium; and (4) she should have been given enough oxygen to prevent hypoxia.

There is evidence in the record to support the conclusion that the failure to administer sufficient amounts of oxygen was a substantial factor in contributing to Donna's injuries. Weiss Hospital treated Donna by placing her in an oxygen-enriched environment, but according to plaintiffs' expert, the level of oxygen was not great enough to prevent hypoxia. The child's color became dusky around 5 a.m. on September 24, 1970, but the oxygen in her isolette was not increased until after 6 a.m. Plaintiffs' expert in neurology, Dr. Klawans, testified that Donna had suffered neurological insult due to hypoxia before she left Weiss Hospital.

■ The verdict shows that the jury found that Weiss Hospital's failure to provide a specially trained nurse to supervise the nursery proximately caused a delay in Donna's treatment, and that the delay was a substantial factor contributing to her injury. "A reviewing court will not set aside a jury's verdict on the ground that it is contrary to the manifest weight of the evidence unless it is obvious that the jury arrived at the wrong conclusion. If there is evidence which supports the jury's verdict, this court should not interfere with the result." (*Derrico v. Clark Equipment Co.* (1980), 91 Ill. App. 3d 4, 10, 413 N.E.2d 1345.) We hold that the evidence presented in the instant case supports the jury's conclusion that Weiss Hospital proximately caused Donna's brain damage.

## III

Weiss Hospital claims that it is entitled to a new trial because of several trial court errors. First, Weiss Hospital objects to the trial court's ruling, as a matter of law, that the Chicago board of health regulations required Weiss Hospital to provide a specially trained nurse, present in the hospital, to supervise the nursery at all times. Weiss Hospital contends that the interpretation of the regulation presents a question of fact for the jury to determine.

■ Our supreme court has stated that "administrative rules and regulations have the force and effect of law, and must be construed under the same standards which govern the construction of statutes." (*Northern Illinois Automobile Wreckers & Rebuilders Association v. Dixon* (1979), 75 Ill. 2d 53, 58, 387 N.E.2d 320, *cert. denied* (1979), 444 U.S. 844, 62 L. Ed. 2d 57, 100 S. Ct. 87.) Therefore, just as statutory interpretation presents a question of law, interpretation of the board of health's regulations is a question of law for the court to determine. See *Inwang v. Community College District No. 508* (1983), 117 Ill. App. 3d 608, 611, 453 N.E.2d 896.

Weiss Hospital contends that the trial court's interpretation of the regulation was erroneous because the chairman of the hospital's pediatric department and the hospital administrator testified that the supervising nurse required by the regulations did not need to be in the hospital in order to supervise. They testified that the regulation was satisfied by Charlene Ehlscheid, who worked from 7 a.m. to 3 p.m. most days, and who was on call 24 hours a day, every day.

■ The court must look first to the words of a regulation in order to determine its meaning. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 277, 469 N.E.2d 167.) The court properly determined that it was not bound by the testimony of witnesses regarding the meaning of the regulation. (*People ex rel. Brenza v. Gebbie* (1955), 5 Ill. 2d 565, 577, 126 N.E.2d 657.) We find no error in the trial court's interpretation of the regulation. As the trial court pointed out, under Weiss Hospital's interpretation, "a nurse on duty in charge of that nursery doesn't have to have any special training." The trial court properly determined that, under the board of health's regulations, Weiss Hospital was required to have one nurse "specially trained in the care of newborn *** infants" present in the hospital to supervise the nursery "at all times."

## IV

■ Weiss Hospital next objects to the trial court's refusal to allow an infectious disease specialist, Dr. Moffat, to testify. On plaintiffs' pretrial motion for an order barring expert witnesses, pursuant

to section 58(3) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 58(3), now Ill. Rev. Stat. 1983, ch. 110, par. 2—1003(c)), the court ordered "that *** Weiss will produce Dr. Millichap and another to be named no later than Wednesday 6/2/82 and be limited thereto." The parties were also allowed to call any treating physicians or nurses who were listed in Donna's hospital records.

In 1970, Dr. Moffat was chief of the division of infectious diseases at Children's Memorial Hospital. One of the doctors treating Donna consulted Dr. Moffat in regard to changing the antibiotic with which she was being treated. The treating doctor made a note of the consultation in the hospital record. That note is the sole reference to Dr. Moffat in the record. The trial court initially indicated that Dr. Moffat was not a treating physician, and it held a *voir dire* examination to allow plaintiffs' counsel to prepare cross-examination of Dr. Moffat's expert testimony. During the *voir dire* examination, the trial court ruled that Dr. Moffat would not be allowed to testify as an expert witness because his name was withheld from plaintiffs in violation of the court's pretrial order. Later in the trial, the court indicated that it would allow Dr. Moffat to testify as a treating physician, as long as his testimony was limited to the note in the record. Defense counsel indicated that defendant intended to call the doctor as an expert, and the court again denied defendant's motion. Near the end of trial defendant moved for a one-day continuance to present Dr. Moffat, or for leave to take his evidence deposition in Madison, Wisconsin, on the evening of the day on which the motion was made. The trial court denied the motion.

Weiss Hospital advances three reasons for objecting to the trial court's rulings: (1) Dr. Moffat was a treating physician, properly identified in the hospital records; (2) Dr. Moffat's testimony was a proper response to the testimony of plaintiffs' expert, Dr. Klawans, who was disclosed shortly before trial; and (3) the sanction of disallowing Dr. Moffat's testimony is too severe for the violation of a discovery order.

Weiss Hospital argues that Dr. Moffat was a treating physician because there was a note which referred to a consultation with him. Dr. Moffat testified in his *voir dire* examination that he never wrote an order for Donna's care, and he never charted anything in her records. He did not remember whether he ever actually saw Donna or reviewed her chart. Weiss Hospital did not ask the court to allow Dr. Moffat to testify to matters presented in the one note indicating that he was consulted. In its offer of proof, Weiss Hospital showed that Dr. Moffat was to testify regarding his opinions as to the cause of Donna's brain damage. We find that the trial court did not abuse its dis-

cretion in refusing to allow Dr. Moffat to testify as a treating physician (*cf. Moss v. Heckler* (E.D.N.Y. 1983), 563 F. Supp. 1177, 1179), particularly because the court later indicated that it would allow Dr. Moffat to testify to the basis for the note, and defense counsel indicated that he wished to present Dr. Moffat as an expert.

■ Weiss Hospital next contends that Dr. Moffat's testimony should have been allowed as a response to the testimony of Dr. Klawans, who was identified as plaintiffs' expert shortly before trial. However, the late identification of Dr. Klawans does not justify defendant's violation of a pretrial order, since there was no motion to restrict plaintiff to experts identified further in advance of trial. (See *Magnone v. Chicago & Northwestern Transportation Co.* (1984), 126 Ill. App. 3d 170, 177-78, 466 N.E.2d 1261.) Moreover, Dr. Moffat's testimony was not directly responsive to Dr. Klawans' testimony. Dr. Klawans is a neurologist who, on direct examination, advanced no opinion concerning infectious diseases. Finally, Dr. Klawans testified only in support of plaintiffs' theory that hypoxia caused Donna's brain damage. Defendants were aware of this theory, and prepared their response thereto, well in advance of trial. Dr. Moffat's testimony was no more directly responsive to Dr. Klawans than was the testimony of Dr. Millichap, of whom plaintiffs had been given proper notice. Thus, Dr. Moffat's testimony was not a new response to new matters raised in Dr. Klawans' testimony. We find that the trial court did not abuse its discretion in refusing to allow Dr. Moffat to testify when he was an undisclosed expert, in violation of a discovery order, despite the late notification of Dr. Klawans' testimony.

■ Finally, Weiss Hospital contends that the sanction of precluding Dr. Moffat's testimony was too severe for the violation of the discovery order. As this court has stated, "[a] court in its discretion may exclude a witness for a party's failure to comply with discovery rules." (*Jensen v. Chicago & Western Indiana R.R. Co.* (1981), 94 Ill. App. 3d 915, 928, 419 N.E.2d 578.) The trial court order barring undisclosed expert witnesses was properly entered in accordance with section 58(3) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 58(3)). That section was designed to facilitate discovery of experts and prevent surprise, especially in medical malpractice cases. (Ill. Ann. Stat., ch. 110, par. 2—1003, Historical & Practice Notes, at 188 (Smith-Hurd 1983).) We find that the trial court did not abuse its discretion in refusing to allow Dr. Moffat to testify. *Jensen v. Chicago & Western Indiana R.R. Co.* (1981), 94 Ill. App. 3d 915, 929, 419 N.E.2d 578.

## V

Weiss Hospital next contends that the trial court erroneously instructed the jury by stating:

"When I use the word 'negligence' in these instructions, I mean the failure to do something which a reasonably careful person would do or the doing of something which a reasonably careful person would not do, under circumstances similar to those shown by the evidence. The law does not say how a reasonably careful person would act under those circumstances. That is for you to decide." (Illinois Pattern Jury Instruction (IPI), Civil, No. 10.01 (2d ed. 1971).)

The hospital contends that this error was compounded by the court's refusal to give the following instruction proposed by defendants:

"The only way in which you may decide whether the defendant, through its employees, possessed and applied the knowledge and used the skill and care which the law required of them is from evidence presented in this trial by expert witnesses. You must not attempt to determine this question from any personal knowledge you have."

■ We agree with the trial court's decision not to give the instruction Weiss Hospital proposed. Under that instruction, the jury would have been precluded from considering the Chicago board of health regulations in determining the appropriate standard of care for the hospital. Our supreme court has held that such regulations are admissible evidence of the standard of care in medical malpractice cases. *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 332, 211 N.E.2d 253, *cert. denied* (1966), 383 U.S. 946, 16 L. Ed. 2d 209, 86 S. Ct. 1204.

The trial court gave a modified version of IPI Civil 2d No. 105.01, which instructed the jury that the hospital's employees were required to apply the knowledge and care ordinarily used in reasonably well-qualified hospitals in similar circumstances. Weiss Hospital argues that this instruction conflicted with the negligence instruction and improperly allowed the jurors to ignore expert testimony.

■■ However, the jury found that all individual defendants were not liable, evidently holding that the defendant nurses complied with the standard of care applicable to them. In deciding whether the hospital administrators were negligent in failing to have a specially trained nurse supervising the nursery, the jury could properly consider what "a reasonably careful person would do *** under circumstances similar to those shown by the evidence," especially where the jury was also instructed to consider the similar circumstances involv-

ing "the skill and care that is ordinarily used by reasonably well-qualified hospitals in the locality ***." Although the court did not restrict the general negligence instruction to consideration of liability on th part of the hospital administrators, we do not see how the hospital was prejudiced by any possible error in instruction. (*Logue v. Williams* (1969), 111 Ill. App. 2d 327, 335, 250 N.E.2d 159.) Accordingly, we affirm the judgment on the verdict against Weiss Hospital in favor of plaintiff Donna Collins.

## VI

■■■ Weiss Hospital advances one further basis for appealing the separate judgment in favor of Donna's parents, plaintiffs Billy and Janice Collins. The hospital contends that the parents' claim for medical expenses incurred in caring for Donna is barred by section 14.1 of the Limitations Act, which states:

"Actions for damages *** deriving from injury to the person of another shall be commenced within the same period of time as actions for damages for injury to such other person." Ill. Rev. Stat. 1981, ch. 83, par. 15.1, now codified as Ill. Rev. Stat. 1983, ch. 110, par. 13—203.

Billy and Janice Collins contended in the trial court that the statute of limitations did not run against them because it was tolled against Donna until Donna became 18. (Ill. Rev. Stat. 1981, ch. 83, par. 22, now codified as Ill. Rev. Stat. 1983, ch. 110, par. 13—211.) While this case was being tried, this court decided that the statute of limitations continues to run against parents suing for damages deriving from injury to their children, even during the minority of the children. (*Fess v. Parke, Davis & Co.* (1983), 113 Ill. App. 3d 133, 135, 446 N.E.2d 1255.) We believe that *Fess* determines the issue, and accordingly, we reverse the judgment entered against Weiss Hospital and in favor of Billy and Janice Collins.

## VII

■■■ Plaintiffs appeal from the judgment entered on the jury verdict in favor of defendant Nurse Shirley Anderson. Several experts for defendants testified that Anderson did not violate the applicable standard of care. Plaintiffs' expert, Dr. Gregory, who testified that Anderson did not meet the standard of care, apparently based his opinion on the assumption that Anderson was to be accountable for meeting the standard of care required of a specially trained nurse supervising the nursery. As we discussed in section I above, on the evidence presented in this case, the jury could have concluded that the

standard of care applicable to Anderson is the care required of a competent nurse, without special training in care of newborns, working in a nursery under the supervision of a specially trained nurse. On our review of the record we cannot say that the jury's verdict is against the manifest weight of the evidence. *Frankenthal v. Grand Trunk Western R.R. Co.* (1983), 120 Ill. App. 3d 409, 415, 458 N.E.2d 530.

Therefore, we affirm the verdicts in favor of defendant Nurse Anderson and plaintiff Donna Collins, and we reverse the verdict in favor of plaintiffs Billy and Janice Collins.

Affirmed in part, reversed in part.

McGILLICUDDY and RIZZI, JJ., concur.