CYNTHIA HAJIAN, a/k/a Cynthia Gawles, Plaintiff-Appellant, v. HOLY FAMILY HOSPITAL, Defendant-Appellee (Patricia Zeller, Defendant).

First District (3rd Division)   No. 1—93—2041

Opinion filed June 21, 1995.

Thomas J. Trinley and David R. Butzen, both of Patrick J. Kenneally, Ltd., of Chicago, for appellant.

John J. Walsh III, of Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers and James A. Knox, Jr., of counsel), for appellee.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff Cynthia Hajian filed a medical malpractice action against Holy Family Hospital (defendant) and her attending nurse, Patricia Zeller, alleging that they failed to diagnose and prevent a stroke she suffered while hospitalized for injuries sustained in a car accident. The jury returned a verdict in favor of defendant upon which the court entered judgment.

On appeal, plaintiff claims the trial court erred by: (1) failing to grant her motions for a directed verdict on the issue of negligence and for judgment notwithstanding the verdict on the issues of negligence and causation in accordance with the principles set forth by this court in *Northern Trust Co. v. Louis A. Weiss Memorial Hospital* (1986), 143 Ill. App. 3d 479, 493 N.E.2d 6, which establishes the "lost chance" doctrine; (2) failing to properly instruct the jury on the issue of proximate cause consistent with *Northern Trust*; (3) making improper evidentiary rulings; and (4) improperly admitting testimony regarding Zeller's nursing habits.

We affirm and file this opinion pursuant to Illinois Supreme Court Rule 23(a). Official Reports Advance Sheet No. 15 (July 20, 1994) R. 23, eff. July 1, 1994.

On August 12, 1982, plaintiff, then 23 years old, was admitted to defendant's intensive care unit (ICU) after sustaining injuries in a car accident including a fracture in her neck, a broken collarbone and the loss of five teeth. Undetected at admission was a tear or dissection of the inner lining of the left internal carotid artery, a major artery that supplies blood to the brain.

During the plaintiff's hospitalization, her mother, Martha Hajian Clavin (Mrs. Hajian), visited her every day for several hours. Mrs. Hajian testified that throughout this period plaintiff never lost her ability to speak in an intelligible or fluent manner nor was her level of consciousness altered, even before she received the plate for her missing teeth and even though she was often tired and had received two Demerol injections a day, a medication for severe pain.

On August 27 at approximately 4 p.m., Mrs. Hajian arrived at the hospital with her husband and four other relatives. On two occasions they observed plaintiff walk with a walker from her room down the hall and then back to her room, a distance of approximately two or three yards.

Nurse Zeller testified that when plaintiff returned to her room she was tired from her lack of sleep and exercise, and she received a drug to aid her digestion; however, these occurrences do not appear on plaintiff's chart. Sometime after 7 p.m. plaintiff received further injections of Demerol and Vistaril to relieve her pain.

Mrs. Hajian testified that although plaintiff appeared tired that evening, a condition which was not unusual, she was able to converse without difficulty.

At approximately 8 p.m. Mrs. Hajian observed plaintiff's condition change suddenly; she could not "talk right," her speech being garbled and unintelligible and her level of consciousness having changed so that she was "woozy." Plaintiff contends this condition, which lasted for at least six minutes, derived from a transient ischemic attack (TIA), which is a warning sign of a stroke. Expert testimony established that a TIA is a sudden reduction in the amount of blood supplied to the brain tissues which can cause changes in a patient's behavior. TIA's vary in duration from one minute to one hour, and a delay in responding to a TIA could have the devastating consequence of the patient's eventually suffering a completed stroke.

At approximately 8:10 p.m., Mrs. Hajian proceeded to the nursing station located about eight feet away from plaintiff's room where she observed Nurse Zeller, the primary nurse on duty at that time,

sitting alone. Mrs. Hajian testified to the following conversation with Nurse Zeller:

"MRS. HAJIAN: There is something wrong with my daughter. She can't talk. She is woozy. Will you come and check her.

NURSE ZELLER: Mrs. Hajian, she is tired. She had a busy day. She has walked for the first time.

MRS. HAJIAN: She has had worse than that here and she could always talk. *** She has been tired before. Please, check her.

NURSE ZELLER: Run along home, Mrs. Hajian. Everything will be all right."

Nurse Zeller had no recollection of Mrs. Hajian approaching her that night regarding the change in plaintiff's condition, and could not recall any difficulty with plaintiff's speech or plaintiff's ability to communicate properly or speak intelligibly during their previous conversations. However, Nurse Zeller stated that if she received such a "plea" from a family member she would have responded immediately as was her habit. She also stated that she knew that garbled speech could indicate a TIA and might be of short duration. But Nurse Zeller also stated that a report from a mother that she could not understand her daughter's speaking, aside from a TIA, could also be consistent with fatigue and the influence of pain medication. Nurse Zeller testified that based on all the entries throughout plaintiff's chart with particular regard to the events of August 27, she had no reason to believe in her best nursing judgment that plaintiff was experiencing a TIA around 8 p.m.

Mrs. Hajian returned to plaintiff's room and remained with her until visiting hours ended at 8:30, when she left the hospital for the evening.

After visiting hours, Nurse Zeller testified that she routinely administered "p.m. care" to the 10 to 12 patients for whom she was responsible (i.e., checking the patient's status as she helps the patient get to sleep), and this practice would last 60 to 90 minutes. During p.m. care, Nurse Zeller would observe the patients, touch their skin, look at their faces and assess whether they were unable to talk or in pain.

At 10 p.m. she gave plaintiff more medication for her digestion, encouraged her to take fluids and repositioned her in bed without complaints and at 11 p.m. wrote in plaintiff's chart "resting comfortably. [Complained of] being tired from increased activity. Awake, alert, painfree at present." Nurse Zeller also testified based on her independent recollection that she encountered plaintiff awake and that they conversed without difficulty.

On August 28 at 2:45 a.m., plaintiff complained of pain and was given more Demerol and Vistaril.

At 7:30 a.m. it was discovered that plaintiff had suffered a stroke sometime after 3 a.m. from an artery tear, resulting in permanent neurologic damage.

Plaintiff initially argues that the trial court erred by denying her motion for a directed verdict on the issue of negligence in that Nurse Zeller's failure to respond in a timely manner to her mother's observation of her speech dysfunction prevented her from receiving appropriate diagnosis and treatment to possibly avert a stroke. Plaintiff also argues that the trial court should have granted her motion for a judgment *n.o.v.* on the issue of causation based upon the principles of *Northern Trust*.

A motion for a directed verdict or a motion for a judgment *n.o.v.* should be granted only when all the evidence, viewed in the light most favorable to the nonmoving party, so overwhelmingly favors the moving party that no contrary verdict could stand. *Carter v. Johnson* (1993), 247 Ill. App. 3d 291, 299, 617 N.E.2d 260, citing *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.

The plaintiff in a medical malpractice action must prove to the satisfaction of the trier of fact: the applicable standard of care; deviation from that standard; and an injury proximately caused by the deviation. *Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 423, 328 N.E.2d 301.

■ The applicable standard of care established in this case was that Nurse Zeller should have exercised her best nursing judgment in promptly responding to Mrs. Hajian's request to evaluate plaintiff's apparent speech dysfunction immediately or at least as soon as possible.

Mrs. Hajian's testimony regarding her conversation with Nurse Zeller supports an inference that Nurse Zeller may have dismissed the possibility of plaintiff's experiencing a serious medical problem. However, defendant has provided evidence that Nurse Zeller exercised her best nursing judgment in attending to plaintiff, even if her inspection occurred after 8:30 p.m., in light of the circumstances which plaintiff experienced since her hospitalization and particularly that day.

Defendant further provided expert testimony that there was no deviation from the standard of care including the obligation to do appropriate charting. The conflicting testimony as to whether Nurse Zeller breached her duty and the standard of nursing care was sufficient grounds to allow the jury to consider the issue of negligence, and the trial court properly denied plaintiff's motion for a directed verdict. (See *Schuchman v. Stackable* (1990), 198 Ill. App. 3d 209, 222, 555 N.E.2d 1012.) If a general verdict against the plaintiff could yield

a finding of no negligence, we need not consider the issue of proximate cause.

Plaintiff's suggestion that, as a matter of law, proximate cause has been proven with such exactitude that we set aside the jury's conclusions is contrary to the facts of this case and the law of Illinois.

As with the issues of negligence, the jury has heard the testimony relating to proximate cause and has found for the defendant. We may not lightly set aside the jury's determination as to these critical facts.

Plaintiff next contends she was deprived of a fair trial when the trial court submitted to the jury the standard jury instruction regarding proximate cause (Illinois Pattern Jury Instructions, Civil, No. 15.01 (2d ed. 1971) (hereinafter IPI)) rather than her proposed non-IPI instruction, and that the trial court compounded the error by allowing defense counsel in closing to rely upon the standard instruction to characterize as "speculation" plaintiff's expert's scenario of the sequence of diagnostic steps preceding surgical therapy.

The trial court has considerable discretion in determining which issues have been raised by the trial evidence and the form in which a jury instruction shall be given. (*Webb v. Angell* (1987), 155 Ill. App. 3d 848, 854, 508 N.E.2d 508.) However, a party is entitled to have the jury instructed on the theory of his case, but the refusal to give an instruction will result in a new trial only where the party shows serious prejudice to her right to a fair trial. The propriety of an instruction depends on whether the instructions, considered as a whole, were sufficiently clear to avoid misleading the jury while at the same time fairly and correctly stated the law. *Villa v. Crown Cork & Seal Co.* (1990), 202 Ill. App. 3d 1082, 1087, 560 N.E.2d 969; see *Webb*, 155 Ill. App. 3d at 854.

The most difficult issue presented in this regard concerns a line of decisions referred to as the "lost chance" or "loss of chance" doctrine. These cases affect the quantum of proof necessary to show causation in medical malpractice cases. They establish a rule that "evidence which shows a reasonable certainty that negligent delay in diagnosis or treatment *** lessened the effectiveness of treatment is sufficient to establish proximate cause." *James v. United States* (N.D. Cal. 1980), 483 F. Supp. 581, 585; *Chambers v. Rush-Presbyterian-St. Luke's Medical Center* (1987), 155 Ill. App. 3d 458, 508 N.E.2d 426; *Northern Trust*, 143 Ill. App. 3d 479.

It may come as no great surprise that the parties' experts differ on the impact of Nurse Zeller's failure to immediately respond to the signal of the TIA. Defendant's expert states that such failure to respond did not substantially increase the risk of a stroke, while

plaintiff's expert testified that 80% to 90% of the patients experiencing a TIA have completed strokes unless there is some intervention and that he would have performed surgery immediately since such a remedy has a 70% to 90% success rate with a risk of complication at less than 5%.

The fate of the "lost chance" doctrine is by no means clear in Illinois.

In the most frequently cited "lost chance" case, *Hamil v. Bashline* (1978), 481 Pa. 256, 392 A.2d 1280, the Pennsylvania Supreme Court held that once it has been shown that the defendant's negligence increased the risk of harm to the plaintiff and that the harm was actually sustained, it then becomes a jury question as to whether the increased risk was a substantial factor in producing the harm.[1]

Section 323(a) of the Restatement (Second) of Torts provides the rationale:

> "One who undertakes *** to render services to another which he should recognize as necessary for the protection of the other's person *** is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm ***." Restatement (Second) of Torts § 323, at 135 (1965).

This court has adopted the *Bashline* doctrine in *Northern Trust* (143 Ill. App. 3d 479, 493 N.E.2d 6), where hospital personnel delayed in contacting the treating physician after the newborn exhibited signs of receiving inadequate oxygen. The plaintiff's expert testified that the nurse's delay in notifying the treating physician of the newborn's condition increased the likelihood of the newborn suffering permanent damage although the expert did not state whether the delay made an actual difference to the newborn and did not quantify into a percentage the likelihood of the impact of effective treatment.

In affirming the jury's conclusion that the hospital proximately caused the newborn's brain damage, we held that " '[e]vidence which

---

[1]In *Bashline*, plaintiff's expert testified that negligent treatment of the decedent deprived him of a 75% chance of surviving a heart attack. No one would testify, however, that to a reasonable degree of medical certainty the negligence caused the death. Under the holding in *Bashline*, the jury was allowed to find that the increased risk caused by the doctor's negligence was a substantial factor causing the death. *Hare v. Foster G. McGaw Hospital* (1989), 192 Ill. App. 3d 1031, 1036, 549 N.E.2d 778.

shows to a reasonable certainty that negligent delay in diagnosis or treatment *** lessened the effectiveness of treatment is sufficient to establish proximate cause.' " *Northern Trust*, 143 Ill. App. 3d at 487, quoting *James*, 483 F. Supp. at 585.

On the other hand, our supreme court in *Borowski* (60 Ill. 2d 418, 328 N.E.2d 301) seems to require the plaintiff to show a better than even chance of a better result, or of survival in a wrongful death action, in order to sustain her burden of proving proximate cause of the defendant's negligence in causing the harm. (*Hare*, 192 Ill. App. 3d at 1037-38; see *Russell v. Subbiah* (1986), 149 Ill. App. 3d 268, 500 N.E.2d 138; *Curry v. Summer* (1985), 136 Ill. App. 3d 468, 483 N.E.2d 711; see also *Campbell v. United States* (7th Cir. 1990), 904 F.2d 1188, 1193.) Essentially, cases such as *Northern Trust* which adopt the *Bashline* approach allow the issue of proximate cause to go to a jury upon a showing that the doctor's negligence increased the risk of harm. *Hare*, 192 Ill. App. 3d at 1038, citing *Chambers*, 155 Ill. App. 3d 458, 508 N.E.2d 426; see also *Galvin v. Olysav* (1991), 212 Ill. App. 3d 399, 403, 571 N.E.2d 218.

However, the second district in *Pumala v. Sipos* (1987), 163 Ill. App. 3d 1093, 1098, 517 N.E.2d 295, seemingly has blended the legal principles set forth in *Borowski* and *Northern Trust* which do not require the plaintiff to prove that a better result would have been obtained absent the alleged malpractice, but still require the plaintiff to show with a reasonable degree of medical certainty that the negligent delay in diagnosis or treatment lessened the effectiveness of the medical services provided to establish proximate cause. In *Pumala*, specifically, the trial court directed the verdict because the evidence did not provide the requisite nexus between the alleged negligence and the injury.

Our supreme court has set the standard that the plaintiff must establish that it is probably more true than not that the negligence of the defendant was the proximate cause of the plaintiff's injury. *Borowski*, 60 Ill. 2d 418, 328 N.E.2d 301; *Hare*, 192 Ill. App. 3d 1031, 549 N.E.2d 778.

*Northern Trust* failed to cite *Borowski*; however, *Chambers* distinguishes *Borowski* by observing that the "more probably true than not" standard does not mean that the plaintiff must show that plaintiff has a more than 50% chance of survival. Rather, plaintiff must show that defendant's negligence increased the risk of harm to the plaintiff and that the harm was actually sustained, for it to become a question for the jury.

Like *Chambers*, *Pumala* seeks to harmonize *Borowski* with *Northern Trust*. There the court acknowledged the "probably more

true than not" rule of *Borowski*, but added that merely meant that the plaintiff's evidence must show a reasonable degree of medical certainty that the negligent delay in diagnosis or treatment lessened the effectiveness of the treatment in order to establish proximate cause. *Pumala*, 163 Ill. App. 3d at 1098.

Other Illinois cases have not been as generous to the doctrine of "lost chance." In the recent *Netto v. Goldenberg* (1994), 266 Ill. App. 3d 174, 640 N.E.2d 948, the court viewed *Northern Trust* and *Chambers* as removing the element of proximate cause in medical malpractice cases. We do not agree with that interpretation of *Northern Trust* and its progeny, but rather, would resolve the conflict by harmonizing the language of *Northern Trust* and *Borowski* as was attempted in *Pumala*.

After the jury heard all the testimony and argument of counsel, it resolved that plaintiff failed to prove defendant's negligence by a preponderance of the evidence. Reviewing courts are required to scrutinize the evidence but will not sit as a second jury and reweigh the evidence or reevaluate the credibility of witnesses, especially where conflicting expert testimony is introduced at trial, which is within the province of the jury as the trier of fact. *Carter*, 247 Ill. App. 3d at 300, quoting *Dabros v. Wang* (1993), 243 Ill. App. 3d 259, 264, 611 N.E.2d 1113.

The trial court gave IPI Civil 2d No. 15.01, the so-called "short form," which states:

> "When I use the expression 'proximate cause', I mean a cause which, in natural or probable sequence, produced the injury complained of." Illinois Pattern Jury Instructions, Civil, No. 15.01 (2d ed. 1971) (IPI Civil 2d).

Plaintiff contends that IPI Civil 2d No. 15.01 created an emphasis favorable to defendant and that reliance upon *Northern Trust* requires a more explicit instruction as to proximate cause. According to plaintiff, *Northern Trust* enables a medical malpractice plaintiff to prove proximate cause simply by showing: (1) corrective therapy was available, having some degree of success to avoid the risk in question; (2) delay increases the likelihood of suffering such risk; and (3) the patient suffered the risk.

Plaintiff's proposed jury instruction provided:

> "When I use the expression 'proximate cause,' I mean any cause which, in natural or probable sequence, was a substantial factor in producing the injury complained of. It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury. In a case like the present one such proximate cause is shown if you believe that:

(1) The defendant's negligence increased the risk of a completed stroke to a person in the plaintiff's position; and

(2) Such a completed stroke was suffered by the plaintiff here." Essentially, plaintiff's instruction supplements the standard long form proximate cause instruction with two non-uniform clauses, the first of which attempts to employ the language of section 323(a) of the Restatement (Second) of Torts. Restatement (Second) of Torts § 323(a) (1965).

■ The trial court properly exercised its discretion in denying plaintiff's non-IPI instruction for several reasons. First, plaintiff's instruction is misleading since it assumes "defendant's negligence" as if it were an undisputed fact instead of an issue in the case. (See *Curry*, 136 Ill. App. 3d at 477, citing *Illinois State Trust Co. v. Walker Manufacturing Co.* (1979), 73 Ill. App. 3d 585, 392 N.E.2d 70 (an instruction may not be given if it tends to mislead the jury).) Moreover, the comment to the long form instruction notes that its use is appropriate when there is evidence that something or the acts of a person *other than the defendant* proximately caused the injury. (IPI Civil 2d No. 15.01, Comment; *Webb*, 155 Ill. App. 3d at 855 (long form instruction inappropriate since no evidence supported patient's allegations that other physicians and hospital personnel failed to properly diagnose and treat her).) Like *Webb*, there is no evidence to show that something or the acts of another person or entity other than defendant proximately caused plaintiff to suffer the stroke. (See also *Kemnitz v. Semrad* (1990), 206 Ill. App. 3d 668, 676, 565 N.E.2d 1 (since plaintiff failed to prove doctor's deviation from relevant medical standard, trial court properly refused to instruct on that issue).) The additional language refers only to the conduct of third persons and not mere "conditions." *Lounsbury v. Yorro* (1984), 124 Ill. App. 3d 745, 752, 464 N.E.2d 866.

Finally, the reference in the short form proximate cause instruction to "a cause" adequately informed the jurors that they were not limited to determining a single cause for plaintiff's injury. (*Webb*, 155 Ill. App. 3d at 857, citing *Willson v. Pepich* (1983), 119 Ill. App. 3d 552, 456 N.E.2d 882.) While an instruction which properly sets out the rule in *Northern Trust* might be appropriate, no such instruction was actually offered in view of the previously mentioned technical defects of the instruction.

■ We also find the trial court did not err by allowing defense counsel's closing remarks at issue, especially since the court properly instructed the jury as to plaintiff's burden of proof and admonished that argument of counsel was not evidence and should be disregarded if the remark had no basis in evidence. See *Gill v. Foster* (1992), 232

Ill. App. 3d 768, 799, 597 N.E.2d 776, *aff'd* (1993), 157 Ill. 2d 304, 626 N.E.2d 190.

Plaintiff also argues that the trial court made numerous evidentiary rulings which permitted defendant to speculate during closing argument as to what might have been found or done had Zeller satisfied her standard of care.

A medical expert witness may testify to his or her opinion expressed as a percentage or otherwise based upon facts assumed to be true, including what might have caused death or an injury, despite any objection that the testimony is inconclusive or speculative. (*Carter*, 247 Ill. App. 3d at 297, quoting *Beloit Foundry v. Industrial Comm'n* (1976), 62 Ill. 2d 535, 539, 343 N.E.2d 504; see *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322.) The testimony need not be based on absolute authority, but only upon a reasonable degree of medical or scientific certainty. *Carter*, 247 Ill. App. 3d at 297, citing *Dabros*, 243 Ill. App. 3d at 265.

During closing argument, counsel has broad latitude to argue the evidence and any reasonable inferences which may be drawn therefrom. (See *Webb*, 155 Ill. App. 3d at 853.) Even if an argument is improper, any prejudice to the opposing party, unless it is extreme, is deemed cured if the court sustains an objection to the argument and instructs the jury to disregard it. (*Webb*, 155 Ill. App. 3d at 852-53.) The record shows the alleged errors were either proper argument, harmless, or cured.

Plaintiff finally argues she suffered prejudice by the trial court's admission of Nurse Zeller's testimony that her habit was to respond to patient and family requests for her attention since no reference was made to Nurse Zeller's conduct on prior occasions and it was undisputed that Nurse Zeller failed to enter plaintiff's hospital room between 8 and 8:30 p.m. Plaintiff maintains the trial court compounded the error by tendering a jury instruction on habit to mislead the jury into believing the alleged habit testimony could be used to rebut the undisputed testimony.

Illinois courts have adopted Federal Rule of Evidence 406 (Fed. R. Evid. 406) regarding the admission of habit evidence:

"Evidence of the habit of a person or of the routine practice of an organization, *whether corroborated or not* and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice." (Emphasis added.) *Bradfield v. Illinois Central Gulf R.R. Co.* (1985), 137 Ill. App. 3d 19, 23, 484 N.E.2d 365, *aff'd on other grounds* (1987), 115 Ill. 2d 471, 505 N.E.2d 331.

See also *Taruc v. State Farm Mutual Automobile Insurance Co.* (1991), 218 Ill. App. 3d 51, 57-58, 578 N.E.2d 134.

The party seeking admission of the habit evidence must first establish a proper foundation to show conduct that becomes semiautomatic, invariably regular and not merely a tendency to act in a given manner. See *Knecht v. Radiac Abrasives, Inc.* (1991), 219 Ill. App. 3d 979, 986, 579 N.E.2d 1248, citing M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 406.1 (5th ed. 1990).

■ The record shows the trial court properly exercised its discretion to admit the habit evidence based upon Nurse Zeller's previous statements which contained sufficiently detailed and specific facts so the court could infer her testimony at issue was reliable and not mere speculation or conjecture. (See *Knecht*, 219 Ill. App. 3d at 988, citing *Bradfield*, 115 Ill. 2d at 480 (Ryan, J., dissenting).) To be sure, the statements of Nurse Zeller are self-serving and the jury was certainly aware that, as a party defendant, she would be likely to put her activities in the best possible light.

Since the admission of Nurse Zeller's testimony was proper, the trial court could exercise its discretion to submit for jury consideration the habit instruction based upon IPI Civil 2d No. 10.08.

For the foregoing reasons, we affirm.

Affirmed.

RIZZI and CERDA, JJ., concur.