EDGAR WISE, Plaintiff-Appellant, *v.* ST. MARY'S HOSPITAL *et al.*,
Defendants-Appellees.

Fifth District   No. 77-61

Opinion filed October 10, 1978.

Hillebrand, Cook & Shevlin, Ltd., of East St. Louis (Bruce N. Cook, of counsel), for appellant.

Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville (Carl W. Lee and Robert G. Wuller, Jr., of counsel), for appellees.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Plaintiff Edgar Wise appeals from an order entered by the circuit court of St. Clair County following a jury verdict in favor of defendant, the estate of Dr. Edgar Woodson. Appellant alleges numerous grounds for reversal of the judgment.

On November 4, 1970, the plaintiff suffered a gunshot wound in the popliteal area of the right leg. He was admitted to St. Mary's Hospital in East St. Louis and was placed under the care of Dr. Edgar Woodson. On November 9, 1970, he was transferred to John Cochran's Veterans Administration Hospital and placed under the care of Dr. William Newton. One week later, his right leg was amputated at a point 8 inches above the knee. Plaintiff alleged the loss of the extremity was caused by the negligence of Dr. Woodson. Prior to trial Dr. Woodson died and his estate was made a party to the action.

The examination notes of Dr. Woodson indicated a suggestion of a popliteal pulse at the time of admission. Testimony of nurses present during the plaintiff's five-day stay at St. Mary's Hospital established the existence of a pedal pulse until November 8, 1970, cyanotic nails and a blue tinge spreading in the toes. Vascular surgery was deemed necessary and the plaintiff was transferred to the Veterans Hospital at his request.

The plaintiff alleged the doctor was negligent in the following respects: (1) failure to use proper care in treating the plaintiff, (2) failure to consult with a vascular surgeon in a timely manner, (3) failure to administer an arteriogram, and (4) failure to treat the plaintiff on a regular basis during his hospitalization at St. Mary's. Each of the claims was submitted to the jury which returned a verdict for the defendant.

On appeal the plaintiff alleges trial court error in the admission of testimony, during the cross-examination of plaintiff's medical expert, of the likelihood that plaintiff would have lost his leg as a result of the gunshot wound even had he received the best medical care. In addition, plaintiff claims error in the admission of certain portions of a discovery deposition of Dr. Woodson, the refusal of an instruction, and urges that the verdict was against the manifest weight of the evidence.

During the cross-examination of Dr. Newton, who testified as an expert witness at trial, defense counsel was permitted, over plaintiff's general objection, to ask the doctor's opinion as to the chance that plaintiff's leg would have required amputation regardless of the medical care available. The witness responded that the figures which date back approximately 15 or 20 years indicate a 50% chance of loss of the extremity regardless of the care given. Dr. Newton further qualified his answer by explaining that his assessment included consideration of certain complications present in plaintiff's case.

The defense consisted largely of testimony by Dr. Andrew Spencer. It was Dr. Spencer's opinion that in light of plaintiff's age, the attendant level of arteriosclerosis, the caliber of the bullet and the close range of the gunshot which produced the wound, plaintiff's leg was "inevitably" lost. Plaintiff's counsel similarly made a general objection to this line of questioning.

■■ ■ Plaintiff now argues that the admission of the evidence was error and confused the jury with regard to a finding of negligence by a preponderance of the evidence. Plaintiff cites *Phebus v. Mather*, 181 Ill. App. 274, as Illinois authority for this proposition. We find that case to be factually inapposite. A plaintiff in a malpractice action must not only prove negligence by a preponderance of the evidence but must also prove that defendant's negligence proximately caused the injury complained of. Plaintiff suggests that as to the issue of proximate cause, the law should be as stated in *Hicks v. United States*, 368 F.2d 626 (4th Cir. 1966); that is, defendant is answerable if he has destroyed "any substantial possibility" of recovery. Various jurisdictions have adopted differing approaches regarding the standard of proof required in showing that a physician's malpractice (rather than the natural process of the underlying disease or injury) proximately caused the injury complained of. Our supreme court has recently held that plaintiff's burden of proving proximate cause is proof by a preponderance of the evidence. (*Borowski v. VonSolbrig*, 60 Ill. 2d 418, 424, 328 N.E.2d 301.) Thus, defendant could properly offer testimony that more probably than not the amputation would have occurred irrespective of the defendant's negligence. (See *Goodman v. Bigler*, 133 Ill. App. 301.) We do not mean to imply, however, that plaintiff must show that a better result would have been

achieved absent the malpractice. Illinois law is clearly to the contrary. (*Borowski v. VonSolbrig*, 60 Ill. 2d 418, 328 N.E.2d 301.) All that need be shown is that defendant's negligence proximately caused the injury, but again, this must be shown by a preponderance of the evidence. The testimony by Drs. Newton and Spencer was relevant on the issue of proximate cause and properly admitted.

■■ Plaintiff also argues that the expert testimony was speculative in nature and should have been stricken. While medical testimony is usually couched in terms of art such as "based upon a reasonable degree of medical certainty," etc., it is not objectionable for the medical expert to testify in terms of percentages so long as it is clear that the opinion expressed is not the product of mere speculation or conjecture. In *Boose v. Digate*, 107 Ill. App. 2d 418, 421, 246 N.E.2d 50, the court held admissible the opinion of a physician that "this particular eye, the right one that was injured, has a 50 percent chance of being removed in the next 10 years." Although that case involved the nature and extent of the injury rather than the question of causal relationship now before us, the underlying rationale is the same. Each doctor testified in detail concerning the factors upon which he based his "estimation." It is evident from the testimony as a whole that the physicians' opinions as to proximate cause were based upon a reasonable degree of medical certainty and were thus admissible. Such questions are not susceptible to exact answers, yet the issue of proximate cause is one which must be resolved by the jury.

■■ Plaintiff argues in his brief that proximate cause alone is not based upon a greater than 50% causal relationship—it is any cause which produced the injury complained of. From this plaintiff argues that because Dr. Newton was allowed to testify in terms of percentages, the jury was confused as to its function first in finding proximate cause and second in determining whether plaintiff had met his ultimate burden of proof by a preponderance of the evidence. We recognize that these issues may become complex in medical malpractice cases; however, in this case any confusion which arose resulted not from the medical testimony itself, but from improper inferences contained in defense counsel's closing argument. Specifically, counsel made the following statements during his summation:

> "After all the shouting and turmoil that we have gone through in this case, out of all the testimony that you have heard, doesn't it come down to this? Did the bullet in the leg in this very sensitive area cause the loss or was it Dr. Woodson?
>
> And if you can't find, ladies and gentlemen, that the plaintiff has proved by a preponderance of the evidence that it was Dr. Woodson and not the gunshot wound, then you ought to find for the plaintiff. But if you cannot, using your head and not your heart,

if you cannot believe that he has met burden [*sic*] and that it was the bullet and not Dr. Woodson that is responsible in this case, then I submit that you must go to your jury room and bring in a verdict for Dr. Woodson's estate."

The logical import of these statements is that *either* the gunshot wound *or* Dr. Woodson's negligence, but not both, resulted in the amputation of plaintiff's leg. The emphasis should be placed rather on whether Dr. Woodson's negligence was a proximate cause of the injury. Nevertheless, no objection was made to defendant's closing argument, nor was the issue raised in plaintiff's brief. Thus, the error is deemed waived and we may not properly consider it.

At trial plaintiff read into the record a portion of the discovery deposition of Dr. Woodson. In the deposition, Dr. Woodson admitted that he was able to feel a pulse in the leg from the time of plaintiff's admission to St. Mary's Hospital until two or three days before his transfer to Veterans Hospital. The defendant requested that an additional portion of the deposition be read to the jury. A conference was held out of the presence of the jury at which time plaintiff objected to the reading of self-serving statements made by the doctor concerning his evaluation of the patient's prognosis.

■■ Upon reconvening the court allowed additional portions of Dr. Woodson's deposition to be read to the jury. Supreme Court Rule 212(c) (Ill. Rev. Stat. 1975, ch. 110A, par. 212(c)) provides:

"If only a part of a deposition is read or used at the trial by a party, any other party may at that time read or use or require him to read any other part of the deposition which ought in fairness to be considered in connection with the parts read or used."

The additional portions must be explanatory of that originally introduced, however, and the reading of the entire deposition, including material which in fairness to both parties need not be considered, is improper. *Morse v. Hardinger*, 34 Ill. App. 3d 1020, 341 N.E.2d 172.

■■ As mentioned, plaintiff's counsel originally read only Dr. Woodson's admission that a pedal pulse was obtainable from the time of plaintiff's admission to St. Mary's Hospital until two or three days prior to his transfer to Veterans Hospital. The court subsequently allowed several pages of testimony, including the following:

"Q. You told him at that time he might lose his leg?

A. Yes I told him, I said, 'This is a bad injury,' and the infection set in, the infection itself will make it necessary for him to lose his leg, which is my estimation of what might happen all along. The infection did cause him to lose his leg. * * *."

It is clear that through these statements defendant ventured far beyond the limited admission contained in the original excerpt read by the

plaintiff. Although this was clearly error, the additional material concerned the likelihood that plaintiff would lose his leg absent malpractice, which we have just determined to be admissible. Under the circumstances we deem the error in allowing the additional portion of the deposition harmless.

We have examined plaintiff's other contentions of error and find them to be without merit. For the foregoing reasons we affirm the judgment of the circuit court of St. Clair County.

Affirmed.

EBERSPACHER, P. J., and KARNS, J., concur.