MARION JOSEPH GALVIN, Plaintiff-Appellant, v. DAVID OLYSAV, Defendant-Appellee.

Fifth District   No. 5—88—0758

Opinion filed April 25, 1991.

Robert Beyers, of Champaign, and Francis Lynch, of Springfield, for appellant.

Heyl, Royster, Voelker & Allen, of Peoria (Gary M. Peplow and Karen L. Kendall, of counsel), for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, Marion Joseph Galvin, appeals the judgment of the circuit court of Christian County granting the motion for summary judgment of defendant, Dr. David Olysav. In this cause, plaintiff argues that summary judgment was improperly granted as there exists a genuine issue of material fact. We reverse and remand.

Plaintiff injured his right arm and the lower portion of his left leg in a traffic accident in December 1981. St. John's Hospital in Springfield admitted him, and he was subsequently attended to by defendant. Medical personnel X-rayed the upper portion of his arm and lower portion of his leg. The X rays revealed fractures of his right humerus and left malleolus. Plaintiff was placed in a short leg cast and hanging arm cast.

Within three days after the injury, plaintiff complained to defendant of pain in his right wrist and hand. He repeated those complaints on various occasions. No X rays of the hand and wrist were taken, however, until nearly a year and a half later. At that time plaintiff

was diagnosed as having right carpal instability. Plaintiff alleges that because of the delayed timing of defendant's diagnosis, a surgical procedure called a carpal roll fusion of the carpas and scaphocapital lunate bones was necessary. Plaintiff now has a fused wrist with a decreased range of motion. He maintains that earlier diagnosis and treatment would have prevented the need for the surgery.

On April 6 and May 25, 1988, Dr. Forbes McMullin was deposed by attorneys for both parties. On June 2, 1988, defendant filed his motion for summary judgment, alleging that plaintiff's use of expert testimony and Dr. McMullin's evidence deposition fail to meet the burden of establishing a *prima facie* case against defendant. In particular, defendant argues that plaintiff failed to show that an act or failure to act was the proximate cause of plaintiff's injury. On August 31, 1988, the circuit court granted defendant's motion.

■ "A defendant may, at any time, move *** for a summary judgment in his or her favor as to all or any part of the relief sought against him or her." (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(b).) However, as the supreme court noted in *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867, 870, although the use of summary judgment is to be encouraged as an aid to the expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation and should be allowed only when the right of the moving party is clear and free from doubt.

■ "In determining the existence of a genuine issue of material fact, courts must consider the pleadings, depositions, admissions, exhibits, and affidavits on file in the case and must construe them strictly against the movant and liberally in favor of the opponent." 111 Ill. 2d at 240, 489 N.E.2d at 870.

Our supreme court has clarified the appropriate standard to be applied in summary judgments in *Gatlin v. Ruder* (1990), 137 Ill. 2d 284, 560 N.E.2d 586. The court stated:

"Our first concern is with the standard the appellate court applied in reviewing the motion to vacate summary judgment. The appellate court, citing *Russell [v. Subbiah* (1986), 149 Ill. App. 3d 268, 500 N.E.2d 138], held: '[T]he plaintiff must prove that it is more probably true than not true that the defendant's negligence was a proximate cause of the plaintiff's injury.' Although *Russell* concerned a summary judgment motion and thus appears to support the holding of the appellate court in the case at bar, we disagree with the standard employed by *Russell* and the appellate court. The *Russell* standard accurately reflects a plaintiff's burden of proof at trial, but incor-

rectly sets forth a party's burden on a summary judgment motion. A motion for summary judgment can only succeed 'if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c); see *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240; see also *Russell*, 149 Ill. App. 3d at 272-73 (Barry, J., dissenting).) The court must construe the evidence 'strictly against the movant and liberally in favor of the opponent.' (*Purtill*, 111 Ill. 2d at 240.) Summary judgment 'is a drastic means of disposing of litigation and therefore should be allowed only when the right of the moving party is clear and free from doubt.' (*Purtill*, 111 Ill. 2d at 240.) ***

Applying the standard established by the statute and *Purtill*, we hold that an issue of material fact with regard to Ruder's negligence arose as a result of Niswander's [Kenneth Niswander, M.D., a professor at the University of California at Davis medical school] deposition. Our duty is not to judge the strength of Niswander's deposition as evidence or to weigh the credentials, credibility and testimony of Niswander against those of Ruder and Raimondi [Anthony Raimondi, M.D., a pediatric neurosurgeon]. We must decide whether Niswander's deposition presented evidence that Ruder may have proximately caused Gatlin's injuries; we hold it did. Certainly proximate cause is an issue of material fact in a negligence suit. Niswander's affidavit did not alter his deposition. The trier of fact should merely consider the affidavit with all of the other evidence in the case. When a circuit court, in considering a motion for summary judgment, weighs the deposition of a witness presented by the opponent to the motion with a subsequently obtained affidavit of that witness by the movant, the court, in effect, admits an issue of material fact exists. A court cannot decide factual disputes as a matter of law. (See *Spidle v. Steward* (1980), 79 Ill. 2d 1, 10.) For these reasons, Gatlin's motion to vacate summary judgment should have been granted." (137 Ill. 2d at 292-94, 560 N.E.2d at 589-90.)

For our review of the trial court's judgment, we will use the standard in *Gatlin*.

■■ ■ In a medical malpractice action, the plaintiff has the burden of establishing the appropriate standard against which the defendant's conduct is to be measured, a deviation from that stand-

ard, and that the deviation proximately caused the plaintiff's injuries. (*Purtill v. Hess*, 111 Ill. 2d at 241-42, 489 N.E.2d at 872; *Walski v. Tiesenga* (1977), 53 Ill. App. 3d 57, 60, 368 N.E.2d 573, 576.) In this case, a question exists only as to the last element—proximate cause. In addition, the only evidence offered to meet the proximate cause burden is the evidence deposition of Dr. McMullin. We agree with the First District Appellate Court in *Northern Trust Co. v. Louis A. Weiss Memorial Hospital* (1986), 143 Ill. App. 3d 479, 487-88, 493 N.E.2d 6, 12, when it held, " '[e]vidence which shows to a reasonable certainty that negligent delay in diagnosis or treatment *** lessened the effectiveness of treatment is sufficient to establish proximate cause.' " 143 Ill. App. 3d at 487-88, 493 N.E.2d at 12, quoting *James v. United States* (N.D. Cal. 1980), 483 F. Supp. 581, 585.

In reading Dr. McMullin's deposition, we note but do not rule on the objections of defendant. We read the deposition as a whole as did the circuit court.

In the deposition, on direct examination by plaintiff's attorney, Dr. McMullin was asked:

"Q. Doctor, in the course of your treatment of Marion Joseph Galvin, did you come to an opinion as to whether Dr. David Olysav's treatment of Joe Galvin was in keeping with the standard of care required of an orthopedic surgeon in Springfield, Illinois at the time of his rendering such treatment?
* * *
A. It was based—it was my opinion that based on what the patient told me, he either may continue complaining of pain in his wrist over a period of time and no X-rays of that wrist that I could see were documented as being taken, that this was not in keeping with proper medical care.

Q. And your opinion was to a reasonable degree of medical certainty, is that right, Doctor?
A. Yes.
* * *
Q. Doctor, based on your training and experience and your treatment of Joe Galvin including your review of his medical records, do you have an opinion to a reasonable degree of medical certainty whether Joe Galvin's chance for a better result would have been better if the diagnosis of carpal instability would have been made on or before January the 18th of 1982?
* * *
A. Yes, if he had had the diagnosis made earlier and if a repair and reconstruction had been performed and if it were suc-

cessful, his wrist would be better than it would be had he had to have an arthrodesis.

Q. And the arthrodesis is what he ended up having, is that correct?

A. Yes.

* * *

Q. Doctor, do you have an opinion as to whether the chance for a better result would have been different depending on the time of diagnosis of such hypothetical injury [similar to plaintiff]?

* * *

A. If one can repair or reconstruct the ligaments more stable, the bones of the joint, the wrist joint stable, one will have a better functioning wrist than if one goes ahead and has to end up fusing certain various other bones."

Reading the deposition in a light most favorable to the nonmoving party, it is clear that plaintiff met the burden of proof by the introduction of the above-quoted deposition. The expert/doctor testified to a reasonable degree of medical certainty that defendant proximately caused plaintiff's injury. Plaintiff certainly introduced evidence sufficient to show, to a reasonable degree of medical certainty, that negligent delay in diagnosis or treatment lessened the effectiveness of treatment.

Defendant argues, based on the cross-examination, that the doctor could not or would not testify "to a reasonable degree of medical certainty." It is apparent that Dr. McMullin was confused about the distinction between possibilities and a reasonable degree of medical certainty. For instance, the doctor was asked:

"Q. Okay. I understand you've talked about possibilities and likelihoods, Doctor, but my question is whether or not you can say to a reasonable degree of medical certainty that a wrist injury would have been diagnosed?

* * *

A. You're asking me a question of—two questions, one, is it possible, and the other question you're asking me, what is my reasonable degree of medical certainty, and my reasonable degree of medical certainty is that there would have been some abnormalities shown on those X-rays, had they been taken."

Later, the following exchange occurred:

"A. He could have been one of those 40 or 50 percent that failed, and he would still end up having a fusion.

Q. Okay. Can you testify to a reasonable degree of medical certainty that a ligament reconstruction operation would have been successful on Marion Joseph Galvin?

A. You're asking me a question, again, using medical certainty and then possibilities. I think the possibilities are 40 percent that it would be successful. I can't say whether he would be one of those 40 percent that was successful or not.

Q. Okay. The standard that we're dealing with here, by law, is testimony to a reasonable degree of medical certainty, and that is why I ask the question in that way, so let me reask it, if I may—

A. That's a silly question, because I told you, the statistics are 40 percent, and whether or not you're a medical doctor or giving medical certainty or not, the statistics are still going to change—not change. So it's going to be 40 percent or so that he's going to be successful and sixty percent that he's not.

Q. Okay. My question is, Doctor, can you testify to a reasonable degree of medical certainty that a ligament reconstruction operation would have been successful on Marion Galvin?

A. I can testify that he had a 40 percent chance; that's all I can testify. I can't say that it would be a hundred percent successful.

\* \* \*

A. Again I'll say that I cannot be a hundred percent medically certain that this would not be the same wrist fusion had the diagnosis been made earlier.

Q. I'm not asking for a hundred percent certainty, Doctor, I'm asking for any degree of medical certainty. Can you testify with any degree of medical certainty that the treatment of or failure to treat Marion Joseph Galvin was the cause of his current condition?

\* \* \*

A. Again, we're getting into semantics; I know this is a way that the law likes to become involved in things.

The way you state your question, I have to answer it honestly, and I'd have to say that I can't be a hundred percent medically certain, because that's the way medicine is. I guess I just can't say anything different."

Defendant alleges that because the doctor testified in terms of percentages and did not repeat the magical incantation "reasonable degree of medical certainty," his testimony is insufficient to show

proximate cause. In *Wise v. St. Mary's Hospital* (1978), 64 Ill. App. 3d 587, 381 N.E.2d 809, this court made clear:

"While medical testimony is usually couched in terms of art such as 'based upon a reasonable degree of medical certainty,' etc., it is not objectionable for the medical expert to testify in terms of percentages so long as it is clear that the opinion expressed is not the product of mere speculation or conjecture." (64 Ill. App. 3d at 590, 381 N.E.2d at 812.)

In light of the fact that Dr. McMullin testified on direct examination that his opinion was based on a reasonable degree of medical certainty, and on cross-examination merely restated his testimony in terms of percentages, it is clear that his opinion is not the product of mere speculation or conjecture. Dr. McMullin's testimony is sufficient to show proximate cause.

■ The cross-examination goes to the weight to be given the medical testimony. It does not, however, go to the reasonable degree of medical certainty standard. Although Dr. McMullin restated his prior direct examination testimony in terms of percentages, he never retracted his assertion that defendant failed to meet the appropriate standard of care or that defendant's deviation from that standard proximately caused plaintiff's injuries. Furthermore, he never retracted his statement that the delay in diagnosis or treatment lessened the effectiveness of treatment. Therefore, plaintiff made a *prima facie* case of medical malpractice. See *Walski*, 53 Ill. App. 3d at 60, 368 N.E.2d at 576; *Northern Trust*, 143 Ill. App. 3d at 487-88, 493 N.E.2d at 12.

The existence of proximate cause is a question for the jury. (*Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 84, 117 N.E.2d 74, 80; *Wise*, 64 Ill. App. 3d at 590, 381 N.E.2d at 812.) Moreover, the amount of weight given to any testimony is within the province of the jury. Questions or issues which would cause reasonable men to arrive at different results are for the jury alone to decide. 2 Ill. 2d at 83, 117 N.E.2d at 80.

For the foregoing reasons, the judgment of the circuit court of Christian County is reversed and the cause remanded for further proceedings.

Reversed and remanded.

RARICK, P.J., and CHAPMAN, J., concur.