WILLIAM HENRY, Plaintiff-Appellant, v. JAMES K. McKECHNIE, Defendant-Appellee.

Fourth District    No. 5—97—0949

Argued June 16, 1998.—Opinion filed August 5, 1998.

Christopher R. Doscotch and Ralph D. Davis (argued), both of Janssen Law Center, of Peoria, for appellant.

Richard F. Record, Jr. (argued), of Craig & Craig, of Mattoon, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiff William Henry appeals from a judgment entered in the circuit court of Coles County in favor of defendant James K. McKechnie, M.D., following a jury trial. Plaintiff sought recovery of damages for defendant's negligence in treating his broken leg. The issues are whether (1) the jury should have been instructed in this medical malpractice case on the doctrine of lost chance/increased risk of harm; (2) the trial court erred in refusing plaintiff's tendered jury instruction on lost chance/increased risk of harm; and (3) plaintiff has waived any alleged error in the trial court's refusal of his tendered instruction Nos. 12 and 14. We affirm.

On August 30, 1992, plaintiff was injured while playing pick-up football. He was taken by ambulance to the emergency room of St. Anthony's Hospital in Effingham, Illinois. Later the same day, plaintiff was transferred to Sarah Bush Lincoln Health Center (hereinafter Sarah Bush) in Mattoon, Illinois, where he was placed under the care of defendant. Defendant testified that plaintiff had a comminuted fracture of the right proximal tibia and fibula with depression of the lateral tibial plateau. Defendant performed the surgery on plaintiff's leg on August 31, 1992, at Sarah Bush. During surgery, a tourniquet was used on plaintiff's leg for two hours and eight minutes. Plaintiff remained under defendant's care throughout his stay at Sarah Bush and was authorized to be discharged on Friday, September 4, 1992, at around 5 p.m. However, according to the testimony of Tracy Gentry, plaintiff remained in the hospital room and under the care of the hospital staff for approximately three more hours, leaving the hospital

at 8:05 p.m. According to defendant, at no time between the surgery and plaintiff's discharge was the splint cast or surgical wound dressing removed to visualize the wound site.

Plaintiff went home immediately after discharge. Early on Sunday afternoon, September 6, 1992, plaintiff experienced severe pain and intense burning sensations in the affected leg. A neighbor drove him to St. Anthony's Hospital emergency room. There, the splint cast and surgical wound dressing were removed. Photographs were then taken of plaintiff's leg. Plaintiff testified that the proffered reason for deciding to have the photographs taken was that "someone in the hospital decided, so they said they could protect their selves [sic] that it didn't happen there." Plaintiff's temperature on admission to St. Anthony's was 102.3 degrees fahrenheit. The examination of plaintiff's leg by emergency room physician Dr. Thomas Bucinski revealed purulent drainage from which it was determined that infection was present. It was determined that plaintiff needed a higher level of care than could be offered at St. Anthony's, and he was transferred to Barnes Hospital in St. Louis.

Plaintiff presented himself to Barnes Hospital emergency room on September 7, 1992. His treating physician, Dr. Clayton Perry, described Henry's condition as "a very clear picture of a fulminant infection. It was an infection out of control." Plaintiff's leg was amputated, at first through the knee joint and then later above the knee joint. Dr. David Olysav testified that on November 6, 1992, plaintiff's leg was further amputated at Memorial Medical Center in Springfield, Illinois, to accommodate the fitting of a prosthetic device.

Plaintiff relied on the testimony of Dr. Michael Davis that the failure to inspect the surgical wound for infection was a breach of the standard of care and that, had plaintiff's wound site been inspected for infection and the infection found and properly treated, his leg could have been saved. Davis also testified that the time the tourniquet was used during the operation performed on plaintiff by defendant was excessive, a breach of the standard of care, and created a situation in which plaintiff's leg was more susceptible to infection. Bucinski similarly testified that not inspecting the wound site for infection was a breach of the standard of care in light of the symptoms observed in plaintiff while hospitalized at Sarah Bush. Defendant presented contrary medical expert testimony with regard to standard of care and whether his actions breached the standard of care in this case.

At the conference on instructions, plaintiff tendered instructions relying on the decision of *Holton v. Memorial Hospital*, 176 Ill. 2d 95, 679 N.E.2d 1202 (1997). Plaintiff's tendered instruction No. 11 stated: "A person who undertakes to render services to another is liable for

physical harm resulting from his failure to exercise reasonable care if that failure increased their [*sic*] risk of harm." Noting this is a non-pattern instruction, the trial court refused it but allowed plaintiff's attorney to argue his theory of the case to the jury.

Plaintiff's tendered issues instruction No. 12 was a modification of Illinois Pattern Jury Instructions, Civil, No. 20.01 (3d ed. 1995) (hereinafter IPI Civil 3d). The second and third paragraphs of plaintiff's tendered instruction No. 12 read as follows:

> "The Plaintiff further claims that one or more of the foregoing proximately caused any increased risk of harm or lost chance of recovery.
>
> The defendant denies that he did any of the things claimed by the Plaintiff, denies that he was professionally negligent in doing any of the things claimed by the Plaintiff and denies that any claimed act or omission on the part of the defendant proximately caused any increased risk of harm or lost chance of recovery."

Plaintiff's tendered instruction No. 14, a modified version of IPI Civil 3d No. 21.02, regarding plaintiff's burden of proof, contained the following language to which defendant objected: "Third, that the professional negligence of the defendant proximately caused an increased risk of harm or lost chance of recovery." Plaintiff's instruction Nos. 12 and 14 were refused for the same reasons the trial court refused No. 11.

Plaintiff's motion for new trial quoted plaintiff's tendered instruction No. 11 but did not specifically refer to plaintiff's instruction Nos. 12 and 14. At the hearing on the posttrial motion, plaintiff argued entitlement to an instruction on the lost chance doctrine. Defendant objected to plaintiff's memorandum in support of the motion for new trial referring to plaintiff's tendered instruction Nos. 12 and 14 because they were not set out in the posttrial motion. The trial court noted that plaintiff argued to the jury that the failure of defendant to view the wound at the time of plaintiff's discharge from the hospital increased the risk of losing the leg to infection or reduced or lost the chance of catching the infection at an earlier point. The trial court also noted that (1) defendant presented evidence that it was not in plaintiff's best interests to view the wound at that time because of the possibility of exposing the wound to further infection and this was not a deviation from the standard of care, and (2) apparently the jury accepted or preferred defendant's evidence. The trial court's order denying plaintiff's motion for new trial stated that it was not error to refuse "instruction 11" on the subject of increased risk of harm as that theory was adequately embraced in the instructions given, plaintiff was allowed to argue that theory to the jury, and the outcome of the

trial would not have been different had instruction No. 11 been given to the jury. After the motion for new trial was denied, this appeal followed.

■ ■ The trial court's ruling on a motion for a new trial will not be set aside unless it is affirmatively shown to have resulted from an abuse of discretion. In determining whether the trial court committed an abuse of discretion, reviewing courts consider whether the jury's verdict was supported by the evidence and whether the losing party was denied a fair trial. *Maple v. Gustafson*, 151 Ill. 2d 445, 455, 603 N.E.2d 508, 513 (1992). In the case at bar, plaintiff challenges the fairness of the trial by arguing the impropriety of the jury instructions.

"The standard for determining whether a trial court abused its discretion in giving or refusing a jury instruction is whether, taken as a whole, the instructions fully, fairly and comprehensively informed the jury of the relevant legal principles. (*Palmer*, 269 Ill. App. 3d at 1062, 647 N.E.2d at 1048.) The test of the propriety of a particular instruction is whether it fairly and accurately states the law. (*Wind v. Hy-Vee Food Stores, Inc.* (1995), 272 Ill. App. 3d 149, 650 N.E.2d 258.) We note that under Illinois Supreme Court Rule 239(a), there is a presumption that a trial court should use Illinois Pattern Instructions when applicable, 'giving due consideration to the facts and the prevailing law.' 134 Ill. 2d R. 239(a); *Pruett v. Norfolk & Western Ry. Co.* (1994), 261 Ill. App. 3d 29, 632 N.E.2d 652." *Carey v. J.R. Lazzara, Inc.*, 277 Ill. App. 3d 902, 906-07, 661 N.E.2d 413, 416 (1996).

Plaintiff presents a two-part argument: (1) some type of jury instruction is necessary to inform the jury of the lost chance doctrine, and (2) plaintiff's tendered instructions appropriately did that. According to plaintiff, not only have out-of-state courts authorized instructions on lost chance, but the Supreme Court of Illinois has authorized an instruction in the language of his tendered No. 11 because the decision in *Holton* rejected the reasoning of this court in *Curry v. Summer*, 136 Ill. App. 3d 468, 483 N.E.2d 711 (1985).

■ Section 323(a) of the Restatement of Torts states in relevant part:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm ***." Restatement (Second) of Torts § 323(a), at 135 (1965).

■ In *Holton*, the Supreme Court of Illinois resolved the question of whether the lost chance doctrine in medical malpractice cases

lessened the plaintiff's burden of proving proximate cause. *Holton*, 176 Ill. 2d at 98, 679 N.E.2d at 1203-04. The *Holton* court reaffirmed the holding in *Borowski v. Von Solbrig*, 60 Ill. 2d 418, 424, 328 N.E.2d 301, 305 (1975), that plaintiffs must prove causation by a preponderance of the evidence, referred to as the "more probably true than not true" standard. *Holton*, 176 Ill. 2d at 105-07, 679 N.E.2d at 1207. Lost chance refers to the deprivation of a chance to survive or recover from a health problem because of the negligence of plaintiff's medical provider or the lessening of the effectiveness of treatment or increasing the risk of an unfavorable outcome to plaintiff by the malpractice. *Holton*, 176 Ill. 2d at 111, 679 N.E.2d at 1209. *Holton* held that the lost chance concept did not relax or lower plaintiff's burden of proving causation under *Borowski*. *Holton*, 176 Ill. 2d at 120, 679 N.E.2d at 1213. *Holton* did reject the reasoning of cases holding that plaintiffs may not recover from medical malpractice injuries if they are unable to prove they would have enjoyed a greater than 50% chance of survival or recovery absent the alleged malpractice, citing *Curry* as an example. *Holton*, 176 Ill. 2d at 119, 679 N.E.2d at 1213. However, the supreme court noted that the objectionable language in *Curry* was *dicta* (*Holton*, 176 Ill. 2d at 112, 679 N.E.2d at 1209). In addition, the court in *Holton* discussed objections to jury instructions without discussing any modifications to IPI instructions to refer to the lost chance doctrine. *Holton*, 176 Ill. 2d at 129-35, 679 N.E.2d at 1217-20.

Plaintiff argues that, since *Holton* rejected the reasoning in *Curry*, it implicitly approved the instruction that was refused by the trial court in *Curry*. That was the same instruction as plaintiff's tendered instruction No. 11 in this case. As noted in *Curry*, the instruction was based on section 323(a) of the Restatement (Second) of Torts. *Curry*, 136 Ill. App. 3d at 476-77, 483 N.E.2d at 717.

In affirming the refusal to give the instruction, this court reasoned as follows:

> "Section 323(a) simply establishes a duty on one who undertakes to render services for the protection of another to use due care to avoid increasing the risk of harm. The question of duty was not really at issue in this case. A physician is always under a duty to use due care in the treatment of his patient. (*McMillen v. Carlinville Area Hospital* (1983), 114 Ill. App. 3d 732, 450 N.E.2d 5.) An instruction which merely emphasizes some abstract principle, sharply and unduly emphasizing some general right that is not directly in issue, is erroneous. *Meyer v. Williams* (1957), 15 Ill. App. 2d 513, 146 N.E.2d 712.
>
> Section 323(a) does go on to provide liability for physical harm resulting from a breach of the duty, but it does not define what is

    meant by 'resulting from.' We believe section 323(a) contemplates the usual standards of proximate cause and burden of proof be applied under it. By not defining 'resulting from,' however, the plaintiff's instruction implies that the jury should find liability once the plaintiff proves the defendants increased the risk of harm which the decedent suffered. An instruction may not be given if it tends to mislead the jury even if it correctly states the law. (*Illinois State Trust Co. v. Walker Manufacturing Co.* (1979), 73 Ill. App. 3d 585, 392 N.E.2d 70.) The instruction would allow a full recovery for the decedent's death by showing any increase in the risk of harm, no matter how slight. Such a result would completely eliminate the element of proximate cause." *Curry,* 136 Ill. App. 3d at 477-78, 483 N.E.2d at 717-18.

This court then went on to point out that a very similar instruction was considered in *Jones v. Montefiore Hospital,* 494 Pa. 410, 431 A.2d 920 (1981), which required that the jury be instructed on traditional standards under the increased risk of harm theory, after noting that the instruction in that case was misleading because it instructed that, once the jury found that defendant's conduct increased the risk of harm, liability had to follow. *Curry,* 136 Ill. App. 3d at 478, 483 N.E.2d at 718.

    Thereafter, the decision in *Curry* discussed and rejected cases cited by plaintiff discussing the lost chance doctrine in relation to the percentage of chance of recovery. *Curry,* 136 Ill. App. 3d at 478-80, 483 N.E.2d at 718-19. The supreme court in *Holton* does not explain to what extent it believed the reasoning in *Curry* is *dicta,* but it expressly rejected that portion of the *Curry* decision discussing the need to prove a greater than 50% chance of survival or recovery. The *Holton* case did not express disapproval of that portion of the *Curry* analysis that rejected the instruction tendered in that case as overemphasizing a part of the case and misstating the law.

    Plaintiff relies on two out-of-state cases. In *Aasheim v. Humberger,* 215 Mont. 127, 131-34, 695 P.2d 824, 827-28 (1985), the court (1) found erroneous the giving of an instruction that would require plaintiff to prove there was a better than 50/50 chance of obtaining a better result; (2) held that plaintiff was entitled to a lost chance instruction under the facts of that case; (3) stated that the instruction "may" reflect section 323 of the Restatement (Second) of Torts; and (4) did not suggest any particular language for the instruction.

    In *Scafidi v. Seiler,* 119 N.J. 93, 99-114, 574 A.2d 398, 400-08 (1990), the trial court rejected the tendered lost chance instruction and gave the standard proximate cause instruction; the appellate court reversed; and the Supreme Court of New Jersey affirmed the ap-

pellate court. The supreme court adhered to its earlier holding in *Evers v. Dollinger*, 95 N.J. 399, 417, 471 A.2d 405, 415 (1984), that section 323(a) of the Restatement applied to medical malpractice cases and plaintiff should be permitted to prove, within a reasonable degree of medical probability, that the negligence increased the risk of harm and the increased risk was a substantial factor in producing the plaintiff's current condition of ill-being. The court concluded that the jury should have been instructed consistent with the announced principles in *Evers*, but did not discuss whether the language of the proposed instruction met that standard. However, the court also noted that this doctrine implicates the measure of damages. The court directed that, on remand:

> "Based on the evidence adduced, the jury will be instructed to determine the likelihood, on a percentage basis, that the infant's birth and death would have occurred even if defendant's treatment was faultless. In the event of a jury verdict against defendant on liability and damages, the trial court will mold the verdict to limit defendant's liability to the value of the lost chance for recovery attributable to defendant's negligence." *Scafidi*, 119 N.J. at 114, 574 A.2d at 408.

In this case, plaintiff did not offer an instruction that would so limit his recovery if defendant was found to be negligent.

Plaintiff cites additional cases that had considered the application of section 323 of the Restatement to medical malpractice cases, but none of those cases discuss non-IPI jury instructions incorporating the lost chance doctrine. *Pumala v. Sipos*, 163 Ill. App. 3d 1093, 517 N.E.2d 295 (1987); *Chambers v. Rush-Presbyterian-St. Luke's Medical Center*, 155 Ill. App. 3d 458, 508 N.E.2d 426 (1987); *Northern Trust Co. v. Louis A. Weiss Memorial Hospital*, 143 Ill. App. 3d 479, 493 N.E.2d 6 (1986).

■ ■ The analysis turns on the language of the tendered instruction. As an abstract principle, if plaintiff is entitled to an instruction, he must still submit an appropriately worded instruction. In cases discussing jury instructions on the lost chance doctrine, the courts have variously required a finding of probability of causation, a finding of substantial possibility of a better result, language based on section 323 of the Restatement of Torts, or modifying the substantial factor formula for causation. Annot., J. Hodson, *Medical Malpractice: "Loss of Chance" Causality*, 54 A.L.R.4th 10, 79-84 (1987 & Supp. 1997).

Supreme Court Rule 239(a) provides in part:

> "Whenever IPI does not contain an instruction on a subject on which the court determines that the jury should be instructed, the instruction given in that subject should be simple, brief, impartial, and free from argument." 134 Ill. 2d R. 239(a).

■ Every litigant is entitled to have the jury instructed as to the law governing the case, but departure from approved IPI instructions requires careful scrutiny since non-IPI instructions should be used cautiously and only when necessary to provide a fair trial. Even if an instruction correctly states the law, it must be sufficiently clear so as not to confuse or mislead the jury and must not unduly emphasize any part of the matter. If the jury instructions fairly and accurately state the law, reversal is not required even though the jury may have been instructed in an alternative manner that would have been equally acceptable. *Colls v. City of Chicago*, 212 Ill. App. 3d 904, 930-31, 571 N.E.2d 951, 967-68 (1991). Plaintiff does not argue that the IPI instructions do not accurately state the law.

The trial court gave, as plaintiff's tendered instruction No. 10, the standard long-form proximate cause instruction:

"When I use the expression 'proximate cause,' I mean any cause which, in natural or probable sequence, produced the injury complained of. It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury." IPI Civil 3d No. 15.01.

In *Hajian v. Holy Family Hospital*, 273 Ill. App. 3d 932, 940-41, 652 N.E.2d 1132, 1138-39 (1995), the plaintiff tendered a modified long-form proximate cause instruction that added two nonpattern clauses, including an attempt to employ the language of section 323(a) of the Restatement as follows:

" 'In a case like the present one such proximate cause is shown if you believe that:

(1) The defendant's negligence increased the risk of a completed stroke to a person in the plaintiff's position; and

(2) Such a completed stroke was suffered by the plaintiff here.' "

The appellate court ruled that the trial court properly refused the instruction because it was misleading, assuming defendant's negligence as if it were an undisputed fact instead of an issue in the case, and there was no evidence showing some proximate cause other than defendant's acts, which is the rationale for using the long version of the instruction. In *Hajian*, the short proximate cause instruction was deemed adequate. The court explained, "While an instruction which properly sets out the rule in *Northern Trust* [recognizing the lost chance doctrine] might be appropriate, no such instruction was actually offered in view of the previously mentioned technical defects of the instruction." *Hajian*, 273 Ill. App. 3d at 941, 652 N.E.2d at 1139.

None of plaintiff's cited cases expressly say that the instruction rejected in *Curry* is an appropriate instruction.

■ Finally, we consider whether plaintiff has waived any alleged error with regard to the trial court's refusal of his tendered instruction Nos. 12 and 14. To properly preserve for review an objection on the giving or refusing to give a jury instruction, the record must demonstrate an objection was made at the instruction conference and a statement of specific grounds was included in a posttrial motion. Merely including in the posttrial motion the numbers of the supposedly erroneous instructions is not sufficient to give the trial court the opportunity to make an informed reexamination of its earlier ruling. *Brown v. Decatur Memorial Hospital*, 83 Ill. 2d 344, 350-51, 415 N.E.2d 337, 339-40 (1980). In this case, although they were referred to in the supporting memorandum filed September 22, 1997, plaintiff's motion for new trial filed August 6, 1997, did not mention his tendered instruction Nos. 12 and 14, and the trial court's order denying the motion did not refer to these instructions. Plaintiff's reply brief cites no legal authority in support of his argument that the issue of the propriety of the ruling on these instructions is not waived. 155 Ill. 2d Rs. 341(e)(7), (g). In addition, the appellant's brief, in arguing the propriety of the tendered instructions, makes no specific reference to any instruction except No. 11, although it does state "the tendered instructions" comply with Rule 239(a). Any argument concerning the propriety of the language contained in his tendered instructions Nos. 12 and 14 is waived.

The judgment of the circuit court of Coles County is affirmed.

Affirmed.

GARMAN, P.J., and STEIGMANN, J., concur.